JEFFREY L. CLEMENS
5210 W. Waterberry Drive
Huron, OH  44839
Tel: 419-433-4438
Shorehaven222@gmail.com

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JEFFREY L. CLEMENS, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | |
| v. | ) | |
| | ) | |
| W. MICHAEL STEWART, AMANDA | ) | |
| O'SHEA, MICHAEL J. O'HARA, | ) | |
| ANDREW QUIGLEY, JOHN DOE, and | ) | False Arrest |
| TOWN OF SCITUATE [MA], | ) | Fourth Amendment |
| | ) | 42 U.S.C. § 1983 |
| Defendants. | ) | 42 U.S.C. § 1985 |
| | ) | |

## Parties

1.    Plaintiff Jeffrey L. Clemens is a freelance writer and
      activist. He is a citizen and resident of the State of
      Ohio. His address is:  5210 W. Waterberry Drive, Huron,
      Ohio 44839;

2.    Defendant W. Michael Stewart is Chief of Police for
      the Town of Scituate, Massachusetts.  His address is:
      604 Chief Justice Cushing Hwy, Scituate, Massachusetts
      02066;

1

3.  Defendant Amanda O'Shea is an officer with the Town of
    Scituate Police Department.  Her address is: 604 Chief
    Justice Cushing Hwy, Scituate, Massachusetts 02066;

4.  Defendant Andrew Quigley is a Clerk-Magistrate with
    the Hingham [MA] District Court.  His address is: 28
    George Washington Blvd, Hingham, Massachusetts 02043;

5.  Defendant John Doe is an employee with the Hingham
    District Court.  His address is: 28 George Washington
    Blvd, Hingham, Massachusetts 02043.

6.  Defendant Town of Scituate is a municipality within
    the State of Massachusetts.  Its business address is:
    600 Chief Justice Cushing Hwy, Scituate, Massachusetts
    02066.

## Jurisdiction

1.  The U.S. District Court, District of Massachusetts,
    has jurisdiction pursuant to 28 U.S.C. § 1331 and §
    1332.

2.  This is an action arising under the laws of the United
    States, the State of Massachusetts, and common law.

3.    That acts and omissions alleged herein occurred in the Towns of Scituate and Hingham, Massachusetts and Huron and Sandusky, Ohio.

4.    All defendants to the state tort claims alleged herein are citizens of states other than Ohio and are therefore diverse.

**Summary**

This action brings forth a state tort claim of false arrest as well as 42 U.S.C. §§ 1983 and 1985 federal claims for a Fourth Amendment violation of the plaintiff's right against illegal seizure, to the extent that Defendant Town of Scituate, by its longtime willful acts and omissions, knowingly fostered and condoned an arrest of the plaintiff under false pretenses and for illegal purposes.  On August 17, 2017, a team of Erie County [OH] Sheriff Deputies and U.S. Marshals, on a warrant signed by Defendant Quigley, entered the plaintiff's home in Huron, Ohio and arrested him for a supposed incident of Witness Intimidation that allegedly occurred on February 2, 2017 in Massachusetts. The plaintiff unsuccessfully fought extradition and, after 56 days of custody, was released on October 16, 2017 after posting $31,000 cash bond and being placed on a GPS ankle monitor.  This action follows.

Allegations

1.    That from May 12, 2005 until June 16, 2015, the Town
      of Scituate Police, namely, Defendant O'Hara and the
      Plymouth County District Attorney's Office, prosecuted
      the plaintiff for Disorderly Conduct, achieving no
      lasting conviction nor plea;

2.    That from May 4, 2007 to July 8, 2013, the plaintiff,
      on three [3] occasions, brought suit against the Town
      of Scituate and members of its police department, and
      others, in federal court, for claims ranging from false
      arrest and false imprisonment to intentional infliction
      of emotional distress, malicious prosecution and various
      42 U.S.C. §§ 1983 and 1985 claims, with roots to a May
      12, 2005 roadside arrest in Scituate, Massachusetts
      following a supposed "suspicious persons" stop conducted
      by Defendant O'Hara and instigated by an inquiry to a
      local resident; [*See* Statement of Related Cases]

3.    That a current fourth action, filed on June 12, 2018,
      based upon a final disposition on June 16, 2015 of the
      aforementioned disorderly conduct charge [and, as such,
      timely filed within statutes of limitations], can be
      reasonably said to have been expected by the defendants,

4

as the only element missing from earlier claims was
"favorable termination", an event that ultimately and
finally occurred on June 16, 2015;

4.    That on April 12, 2016, the plaintiff and his brother,
in the presence of Defendant Quigley, spent several
hours gathering and copying documents at the Hingham [MA]
District Court related to the Scituate prosecution[s]
that ceased on June 16, 2015, doing so before they were
systematically destroyed, by custom, going then to the
Scituate Town Hall to conduct a public records search;

5.    That at the Scituate Town Hall Records Office, plaintiff
and his brother, in their lawful property search, was
assisted in their inquiry by a woman later [August 2017]
identified as "Therese Tufts";

6.    That on April 13, 2016, the plaintiff and his brother
returned to the Hingham District Court for further
document gathering, as omissions came to be known, again
in the company of Defendant Quigley;

7.    That upon leaving the courthouse, the plaintiff was
followed by a Hingham Police cruiser and later pulled
over on the premise that the officer was informed by
Defendant O'Hara that the plaintiff [and his brother,

both] had invalid driver's licenses [not true as both had valid Ohio and Washington licenses, respectively];

8. That the Hingham Police later that day, upon inquiry, told the plaintiff that O'Hara, off-duty, had informed them [HPD] that a court employee [at HDC] had called him [O'Hara] to tell him of the presence of the plaintiff and his brother at the courthouse;

9. That it was later learned [on the 13th] that Scituate Police Chief Michael Stewart gave the okay to O'Hara, on April 13, 2016, to call the Hingham Police and encourage them to surveil the plaintiff and his brother;

10. That upon leaving the Hingham Police headquarters, the plaintiff and his brother went to Scituate Police head-quarters to inquire of Defendant O'Hara, however, they were intercepted by Chief Stewart and told that, in part, due to their presence at the town hall the day before [he did not identify how he came to know they were there], they were barred from the building, likewise being given No Trespass Notices;

11. That during the subsequent summer [2016] the plaintiff made numerous inquiries of the Town of Scituate's website to monitor the meeting times of its Board of

Selectmen [BOS] with the intent to attend one of their scheduled public meetings and challenge the No Trespass Letter given him by Defendant Stewart;

12. That during these web inquiries it was learned that, in April and May 2016, the BOS conducted numerous Executive Session in-chambers meetings in regards to "Clemens" and a stated "security" issue;

13. That in March 2016, the town's attorney, Stephen Pfaff, filed for an injunction seeking to bar the plaintiff from filing further lawsuits against the town, failing to mention, in his motion papers, that "favorable termination" had accrued to the plaintiff in June 2015 [such an omission is otherwise sanctionable conduct];

14. That the plaintiff, in September 2016, traveled to Scituate to attend a BOS meeting and, just prior, in preparation, went to the Scituate Town Hall to file a public records request seeking the minutes to the Executive Session meetings conducted by the BOS the previous April and May;

15. That the plaintiff, under protest, was arrested by the Scituate Police for an alleged violation of the No Trespass Letter issued by Stewart the prior April

[plaintiff insisted that the letter was not valid and was issued without rightful authority or basis];

16. That the following day, September 21, 2016, plaintiff was arraigned for Trespassing at the Hingham District Court [HDC] and, after an in-court "battle" to challenge a proposed $10,000 bail, was released, however, he was given no date i.e. notice, neither verbal nor written, for any subsequent hearing;

17. That from September 28, 2016 to October 18, 2016 the plaintiff made numerous requests of the Plymouth County District Attorney's Office [PCDA] – for what can be called "initial discovery"; the PCDA did not respond;

18. That on or about October 18, 2016, the plaintiff called the Hingham District Court to inquire of his case and was informed, for the first time, of a November 1, 2016 hearing [no summons ever issued];

19. That on or about October 28, 2016, the plaintiff sent to be filed [at HDC] a written pleading arguing for a lack of noticing and noting the PCDA's failure to provide initial discovery, further adding that he [the plaintiff] considered his appearance as "voluntary" given that he had received no formal notice of the hearing;

8

20. That despite the plaintiff's pleadings [It must be noted that plaintiff has to travel 740 miles to get to Hingham from Ohio], which are verified to have been received, the Hingham District Court issued a bench warrant for the plaintiff's supposed "non-appearance";

21. That in subsequent months the plaintiff continued to serve discovery requests upon the PCDA and to motion for a set aside of the November 1, 2016 warrant and to reschedule a future hearing [the court took no action];

22. That the PCDA, on or about November 21, 2016, finally released "initial discovery" to the plaintiff, who learned for the first time the full identity of the woman at the Scituate Town Hall [Lorraine Devon] who, on September 20, 2016, when the plaintiff made his public records request, called the Scituate Police;

23. That from October 2016 through January 2017, and especially on or about December 17, 2016, the plaintiff made specific requests of the PCDA for the identity of the person or persons who supposedly apprised Defendant Stewart of the presence of the plaintiff and his brother at town hall on April 12, 2016 [when a public property records inquiry was made], all ignored;

24. That on February 2, 2017, given the lack of response
    from the PCDA, the plaintiff called the property records
    office, a woman answered and a dialog ensued lasting
    about a minute and a half wherein the plaintiff asked
    if the woman recalled his visit, with his brother, the
    previous April; she acknowledged the visit, however,
    upon the plaintiff asking her for her first name, she
    said: "I don't have to tell you."

25. That the plaintiff then said: "Well, so you know, this
    involves a police matter" and she responded: "Yes, I
    know" and hung up or otherwise put the plaintiff on hold;

26. That, too, on February 2, 2017, the plaintiff sent a
    complaint to the Massachusetts Attorney General's Office
    [MAGO] alleging that the Town of Scituate was in clear
    violation of state's Open Meetings Laws for two reasons:
    [1] not producing and releasing minutes in timely
    fashion, and [2] conducting Executive Sessions for a
    purpose other than stated in its published agendas,
    citing "security" while in fact discussing "litigation";

27. That the complaint was served on the Scituate's Board
    of Selectmen [BOS] two days later [February 4, 2017], as
    can be verified by post office delivery records;

10

28.  That from March to May 2017, the plaintiff wrote
     numerous letters to MAGO with regards to his complaint,
     eventually learning, by MAGO's response to inquiries,
     that Scituate Administrator Patricia Vinchesi had called
     MAGO before turning over the subject "minutes",
     qualifying and otherwise insisting that they be kept
     confidential, an otherwise severe ethical concern [it
     was an otherwise undocumented contact between Vinchesi
     and MAGO that jeopardized the integrity of MAGO's
     investigation];

29.  That on July 17, 2017 it was announced in the press that,
     despite her being less than half way into her then
     present contact, Vinchesi was resigning "sometime in
     October";

30.  That on the early morning of August 17, 2017, seven [7]
     armed law enforcement officials [both sheriff deputies
     and U.S. Marshals] arrested the plaintiff at his home in
     Huron, Ohio on what came to be learned as an outstanding
     warrant issued by the Hingham District Court on February
     7, 2017, and signed by Defendant Quigley;

31.  That an actual warrant was not presented to the plaintiff
     on his actual arrest but a so-called NCJIS print-out

11

[cont] dated August 15, 2017 procured by a certain U.S. Marshal Donald Freeman of the U.S. District Court/Boston;

32. That the U.S. District Court/Boston, was the location of the plaintiff's years-long Scituate litigation [*See* Paragraph 2];

33. That Scituate Police Officer Amanda O'Shea, who is known to work the night shift, on February 6, 2017, it was learned, in August 2017, prepared a report alleging that on February 2, 2017, four days earlier, she saw a certain Therese Tufts, who had presumably walked over to the police station from her office at town hall, saw that she was "upset" and talked with her in an interrogation room where it was reported that the plaintiff had called and asked repeatedly "Who called the cops on me?";

34. That the O'Shea report never stated what Tufts said in response to the supposed questioning by the plaintiff;

35. That the plaintiff, when he called Scituate Town Hall on February 2, 2017 and spoke with a woman [only later identified as Therese Tufts], never asked "Who called the cops on me?", much less doing so repeatedly; the only additional question asked was, other than those mentioned elsewhere in this complaint, was "Were you working in

[continued] this office in 2005?" The woman (Tufts) responded: "No, you must have the wrong person";

36. That the plaintiff made no intimidations whatsoever yet was charged with "Intimidation of a Witness";

37. That Therese Tufts, despite a warrant and police report implying she was a witness, is not a witness to any act by the plaintiff, prior to February 2, 2017 [as well as on February 2, 2016], that was "illegal" or "criminal" and so, by definition, she is not a witness nor can she ever be reasonably expected to be a witness in a criminal prosecution, making the charge of Intimidation of a Witness as entirely baseless;

38. That, as well, there is no allegation whatsoever in the O'Shea charging papers, or Quigley warrant, that speaks to any conduct by the plaintiff that shows an intent to "intimidate" Tufts for the purpose of affecting her testimony in a present or future-intended criminal prosecution, quite simply, because no such conduct ever took place nor could take place [again, Tufts is not a witness to any conduct, much less criminal conduct, that is cited anywhere in police records prior to February 2, 2017 and, as such, cannot be deemed a witness];

39. That the Intimidation of a Witness charge, and the alleged reporting by Defendant O'Shea, is a complete and knowing fabrication;

40. That, to note, the son of Therese Tufts is a Scituate Police Officer and, as such, has a close working association with Defendants Stewart, O'Shea and O'Hara;

41. That on July 25, 2017, it was announced in the public press that Town Administrator Patricia Vinchesi promoted Amanda O'Shea to "Sergeant", on the *night* shift;

42. That as a past and ongoing night shift officer, it is highly improbable that O'Shea would have encountered Theresa Tufts, a daytime employee, in the manner as she reported in her charging papers, that is, happening to see her [Tufts] just as she walked into the police station supposedly with an intent to make a complaint;

43. That Theresa Tufts formerly lived in New York City and was employed with a public relations firm called Carl Byoir & Associates whom as well, at the time, had in its employ a certain Alan Feldman;

44. That Metro-Goldwyn-Mayer [MGM], a former legal adversary
    of the plaintiff, was a longtime client to Carl Byoir &
    Associates;

45. That Alan Feldman, upon leaving Carl Byoir & Associates,
    joined MGM Grand, a subsidiary, at the time, of MGM's
    parent The Tracinda Corporation, remaining there for over
    30 years and eventually achieving the rank of Vice-Pres,
    Government Relations;

46. That plaintiff formerly had civil litigation involving
    MGM and The Tracinda Corp, whose president, at the time,
    was Jay Rakow, former general counsel for Paramount
    Pictures as well as MGM when above-referred litigation
    occurred;

47. That Jay Rakow and Alan Feldman, whom Theresa Tufts had
    every occasion to know professional while at Carl Byoir,
    were close and longtime colleagues;

48. That Jay Rakow, as well, is a colleague of a certain
    Stephen Clymer at Cornell University School of Law, being
    at times intermittently a U.S. Attorney and Law Professor
    at Cornell University as is/was Jay Rakow;

49. That in June 2005, just weeks after the plaintiff first
    encountered the Scituate Police [in events that are well
    documented in prior suits], Stephen Clymer sought and
    received an indictment against plaintiff for allegedly
    threatening a certain Dickran Tevrizian, friend to MGM's
    chairman and a person whom plaintiff earlier had accused
    of accepting a $250,000 illegal gratuity from Tracinda,
    headed at the time by Jay Rakow;

50. That, by all appearances, Theresa Tufts, by cooperating
    in a prosecution of the plaintiff by the Scituate Police,
    was, too, aiding the U.S. Attorney's Office in their –
    what can be called – ongoing vendetta against plaintiff
    stemming from two federal prosecutions over ten years,
    the latter of which was commenced in 2010 by the actions
    of Stephen Pfaff, longtime counsel to the Scituate Police,
    and Patricia Vinchesi, onetime chief administrator for
    the Town of Scituate;

51. That a certain Glenn Tufts, of Massachusetts, it is
    believed, is a distant relative of Howard Tufts, husband
    to Theresa [prior calls to him by the plaintiff went
    unreturned so that confirmation was not possible];

16

52. That Glenn Tufts is/was associated with the San Francisco
    Giants whose former player, Matt Williams, was a witness
    for the U.S. Attorney's Office against a certain Anthony
    Pellicano, a person the plaintiff has previously accused
    of illegal activity involving MGM and Dickran Tevrizian
    and who eventually was indeed convicted, on an unrelated
    count, of conspiracy with a certain Terry Christensen,
    longtime attorney to MGM, MGM Grand and the Tracinda Corp;

53. That the person who, at the Hingham District Courthouse,
    on April 12, 2016, called Defendant O'Hara, leading to
    the above-described pull-over [*See* Paragraphs 6-10], is
    unknown to the plaintiff and otherwise, even upon request
    to identify him or her, undisclosed by Defendants Stewart
    and O'Hara as well as the PCDA] but reasonably believed
    to be Defendant Quigley, the person who later to sign a
    Scituate Police affidavit charging the plaintiff with the
    subject Intimidation of a Witness charge;

54. That in public document requests made to Defendant
    Stewart from September 2016 to November 2017, Stewart
    claimed that he possessed no documents in regard to [1]
    prior what he called threatening communications that
    supposedly supported his No Trespass Letter issued to the

[continued] plaintiff and his brother, [2] with regard to a AHRO supposedly served on the plaintiff and proffered by Patricia Vinchesi [and later presented to both Gov. Kasich and the judge in Ohio who ruled with respect to the plaintiff's 2017 extradition], and [3] with regard to supposed print-outs of drivers license bureau inquiries supposedly used to deem the plaintiff as not having a valid license and, as such, supposedly justifying the subject pull-over [*See* Paragraph 7];

55. That in the event that such "hidden agent" is found to be someone other than Quigley, the plaintiff herein and hereby designates such person as Defendant John Doe;

56. That HDC employee Joseph Legotti, who, too, was present at the HDC when the plaintiff visited in April 2016, may as well be the "hidden agent" i.e. John Doe, working solely or in concert with, or with an intimidation over, Andrew Quigley [Legotti and Quigley have been employed with the HDC since before the Scituate Police prosecution of the plaintiff commenced in 2005];

57. That as a result of the plaintiff's arrest on August 17, 2017, he was unable to attend and complete undergraduate courses in Architecture and online graduate courses in

[continued] Sustainability, both which were previously
arranged and due to begin the following week;

58. That as a result of his arrest, the plaintiff endured 56
days of incarceration, in "fighting" extradition, as well
as a nearly two-year prosecution;

59. That in regards to extradition, the plaintiff's family
hired a "local attorney" who, it later was learned, had
ties to the prosecutor in Erie County [Sandusky, Ohio]
arguing for extradition [a fraud upon that court is
alleged in Case No. 2017-CR-371 at the Erie County Court
of Common Pleas and an appeal taken in Case No. E-18-032
at the Sixth District Court of Appeals];

60. That in September 2017, the PCDA, acting on behalf of the
O'Shea-Quigley warrant, in a petition to the governor
[Kasich, of Ohio], alleged "flight" on the part of the
plaintiff, a mischaracterization if not falsehood as the
plaintiff, at the time, had made two prior motions for a
new hearing date regarding the trespass charge against
him and tended aggressively to its resolution, including
filing numerous motions to set aside the November 1, 2016
bench warrant at HDC, constituting nothing short of fraud
upon the governor who, being deceived, issued a warrant

[continued] allowing the Scituate Police to extradite,
that is, to forcedly take the plaintiff to Massachusetts
in early October 2017;

61. That the plaintiff, once a governor's warrant issued,
prepared, and dispatched to the court to be filed, and
indeed filed, an habeas corpus petition challenging the
legality of the extradition, including an argument for
the inappropriate involvement of federal officials in the
arrest and extradition of the plaintiff;

62. That but for his local counsel, whom the plaintiff
discovered later employed an Erie County Assistant
Prosecutor "Of Counsel" and whom, as well, the
plaintiff sought his withdrawal weeks before his final
extradition hearing, yet who attended said hearing,
under [alleged] false pretenses, the petition
languished, saw no appeal and, as such, the plaintiff
was extradited to Hingham, Massachusetts, prosecuted
and ultimately acquitted on April 11, 2019;

### Damages

1. That as a result of the arrest, incarceration, and
extradition of the plaintiff to Massachusetts, under
false pretenses, the plaintiff endured multiple and
extensive physical, financial and emotional costs and

[continued] expenses, pain and suffering, apprehension, anxiety, public humiliation, embarrassment, inconvenience, frustration, loss of respect and reverence of his friends, family, colleagues and peers, loss of consortium and numerous opportunities lost or impaired and other damages not as yet known, identified, accrued or specified.

2.  That as a result of the arrest, incarceration, and extradition of the plaintiff to Massachusetts, under false pretenses, the plaintiff was unable to attend Nicolet College in Rhinelander, Wisconsin, where for months he planned to attend and take computer aided design courses toward a certificate in Architectural Technology, and was, in fact, enrolled, as of August 17, 2017, as well as unable to take two online graduate courses that he had arranged with Black Hills State University in Spearfish, South Dakota, lost opportunities that will affect the plaintiff for a significant time.

## Facts Relied Upon

Allegations herein are supported by facts and evidence contained in public court records, police reports, the sworn testimonies of Jeffrey L. Clemens and Jonathan A. Clemens, that which is obtainable under Discovery including sworn

[continued] depositions, expert testimonies, police phone logs, the testimony and reports of past and present employees of the U.S. Marshals Service, Federal Bureau of Investigation [FBI], and the Scituate Police Department, the records of the Town of Scituate and its Board of Selectmen and in-house and outside attorneys, including Stephen Pfaff and James Toomey, the Hingham Police Department, and others yet to be cited or yet unknown, including but not limited to those associated with the Hingham District Court, the Massachusetts Board of Bar Overseers, and the Massachusetts Attorney General's Office as well as the Plymouth County {MA} and Erie County [OH] District Attorney's Offices.

## Cause of Action

The preceding facts, provable allegations and reasonable inferences drawn from them constitute wrongful and actionable conduct on part of the named defendants, more specifically:

1.   The acts and omissions on the part of Defendant Michael Stewart constitute false arrest, malicious prosecution and liability pursuant to 42 U.S.C. § 1985, mainly, conspiring to violate the Fourth Amendment constitutional right of the plaintiff against illegal seizure and imprisonment.

2.    The acts and omissions on the part of Defendant
      Amanda O'Shea constitute false arrest, malicious
      prosecution and liability pursuant to 42 U.S.C.
      § 1985, mainly, conspiring to violate the Fourth
      Amendment constitutional right of the plaintiff
      against illegal seizure and imprisonment.

3.    The acts and omissions on the part of Defendant
      Michael J. O'Hara constitute false arrest,
      malicious prosecution and liability pursuant to
      42 U.S.C. § 1985, mainly, conspiring to violate
      the Fourth Amendment constitutional right of the
      plaintiff against illegal seizure and imprisonment.

4.    The acts and omissions on the part of Defendant
      Andrew Quigley constitute false arrest, malicious
      prosecution and liability pursuant to 42 U.S.C.
      § 1985, mainly, conspiring to violate the Fourth
      Amendment constitutional right of the plaintiff
      against illegal seizure and imprisonment.

5.    The acts and omissions on the part of Defendant
      John Doe constitute false arrest, malicious
      prosecution and liability pursuant to 42 U.S.C.
      § 1985, mainly, conspiring to violate the Fourth

[continued] Amendment constitutional right of the
plaintiff against illegal seizure and imprisonment.

6.      The acts and omissions on the part of Defendant
Town of Scituate constitute liability pursuant to
42 U.S.C. § 1983, mainly, by its conduct, acts and
omissions, willfully allowing and facilitating
the violation of the plaintiff's constitutional
right against illegal seizure and imprisonment.

## Relief Sought

The plaintiff prays for equitable relief in the form of
damages, in the amount of $400,000 compensatory, to be proven
at trial, and $800,000 punitive, and other relief as deemed
fair and appropriate.

## Jury Trial

The plaintiff hereby demands a trial by jury pursuant
to Rule 38(b) of the Federal Rules of Civil Procedure.

Respectfully submitted,

Jeffrey L. Clemens   Dated this 6th day of April 2022

24