## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEFFREY L. CLEMENS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 22-cv-10593-DJC |
| W. MICHAEL STEWART, AMANDA | ) |
| O'SHEA, MICHAEL J. O'HARA, ANDREW | ) |
| QUIGLEY, THERESA TUFTS, JOHN DOE, | ) |
| and TOWN OF SCITUATE, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM AND ORDER

CASPER, J.                                                    February 17, 2023

### I.      Introduction

Plaintiff Jeffrey L. Clemens ("Clemens") has filed this lawsuit against Defendants W.

Michael Stewart ("Stewart"), Amanda O'Shea ("O'Shea"), Michael J. O'Hara ("O'Hara"),

Theresa Tufts ("Tufts"), Town of Scituate (collectively, "Town Defendants"), Andrew Quigley

("Quigley"), and a John Doe defendant.  D. 13.  Clemens alleges conspiracy to violate his Fourth

Amendment rights in violation of 42 U.S.C. § 1985 and intentional infliction of emotional distress

against Stewart, O'Shea, and O'Hara (Counts I–III, respectively).  D. 13 at 27–28.  He also alleges

conspiracy to violate his Fourth Amendment rights in violation of 42 U.S.C. § 1985 against

Quigley, the John Doe defendant, and Tufts (Counts IV–VI, respectively).  Id. at 28–29.  Finally,

he alleges 42 U.S.C. § 1983 liability against the Town of Scituate for willfully allowing and

facilitating the alleged violation of his constitutional rights (Count VII).  Id. at 29.  The Town

Defendants and Quigley have moved for dismissal as to all claims against them, D. 23; D. 34.  For the reasons stated below, the Court ALLOWS the Town Defendants' motion to dismiss, D. 23, and ALLOWS Quigley's motion to dismiss, D. 34.

## II.     Standard of Review

A defendant may move to dismiss for a plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To withstand a Rule 12(b)(6) challenge, the Court must determine if the complaint "plausibly narrate[s] a claim for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (citations omitted).  First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein.  Id. (citation omitted).  Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit.  Id. (citation omitted).  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged."  Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face."  García-Catalán, 734 F.3d at 103 (quoting Iqbal, 556 U.S. at 678).

## III.    Factual Background

The following facts are drawn from Clemens' amended complaint, D. 13, and are accepted as true for the purpose of resolving the pending motions to dismiss.

On April 12, 2016, Clemens and his brother visited the Hingham District Court, while Quigley was present, to gather and copy documents related to the Town of Scituate's prosecution of Clemens for disorderly conduct, which occurred between May 12, 2005 and June 16, 2015.  Id.

at 4–5.  Clemens and his brother then went to the Scituate Town Hall to conduct a public records search and were assisted by Tufts.  Id. at 6.  The next day, Clemens and his brother returned to the Hingham District Court to continue gathering documents, again while Quigley was present.  Id.  Upon leaving the courthouse, Clemens was followed by a Hingham police cruiser and pulled over because the officer was informed by Scituate police officer O'Hara that Clemens and his brother had invalid driver's licenses.  Id.  According to the officer, a court employee there told O'Hara, who then told the Hingham police department, that Clemens and his brother were at the courthouse that day.  Id.  After leaving the Hingham police headquarters, Clemens and his brother proceeded to the Scituate police headquarters but were intercepted by Scituate Chief of Police Stewart and told that they were barred from entering due to their presence at the Scituate Town Hall the day before.  Id. at 7.  Stewart served them a No Trespass Notice to prevent them from entering the Scituate Town Hall.  Id.

Clemens was arrested on September 21, 2016 for violating the No Trespass Notice after attempting to enter Scituate Town Hall to file a public records request.  Id. at 8–9.  He was arraigned that same day on a single count of trespass.  Id. at 9.  Throughout October 2016 to January 2017, Clemens made various information requests about the identity of the individual who had alerted officers of his presence at Scituate Town Hall on April 12, 2016.  Id. at 11.  On February 2, 2017, Clemens called the property records office at the Scituate Town Hall and spoke to a female employee, who refused to provide him with her name.  Id. at 12.  That same day, Tufts visited the police station and spoke with Scituate police officer O'Shea after Clemens had called Tufts' office and allegedly asked, "Who called the cops on me?"  Id. at 14–15.  On February 6, 2017, O'Shea prepared a police report regarding the February 2, 2017 call.  Id.

On August 17, 2017, seven law enforcement officials arrested Clemens at his home in Huron, Ohio on the outstanding Hingham District Court warrant for felony witness intimidation related to his February 2, 2017 call to Tufts at the Scituate Town Hall.  Id. at 4, 14.  Quigley, a clerk magistrate at the Hingham District Court, signed the warrant for Clemens' arrest.  Id. at 14.  Clemens later was acquitted of the charge in April 2019.  Id. at 4.

## IV.    Procedural History

Clemens instituted this action on April 6, 2022, D. 1, and later amended his complaint, D. 13.  The Town Defendants and Quigley filed motions to dismiss all claims against them.  D. 23; D. 34.

## V.    Discussion

### A.    Counts I–VI

In the amended complaint, Clemens alleges conspiracy to violate his Fourth Amendment rights in violation of 42 U.S.C. § 1985 and intentional infliction of emotional distress against Stewart, O'Shea, and O'Hara (Counts I–III, respectively).  He also alleges conspiracy to violate his Fourth Amendment rights in violation of 42 U.S.C. § 1985 against Quigley, Doe, and Tufts (Counts IV–VI, respectively).

#### 1.    42 U.S.C. § 1985 Claims

Section 1985(3) of Title 42 concerns private conspiracies to deprive an individual or class of individuals of protected rights driven by some racial or otherwise class-based discriminatory animus.  To plead such a claim, a plaintiff must:

> [f]irst, the plaintiff must allege a conspiracy; second, he must allege a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws; third, he must identify an overt act in furtherance of the conspiracy; and finally, he must show either injury to person or property, or a deprivation of a constitutionally protected right.

4

Perez-Sanchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008) (citation omitted). Furthermore, "[i]t has long been established that a claim under § 1985(3) requires 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" Id. (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).   To satisfy this latter requirement, "plaintiffs must allege facts showing that (1) the defendants conspired against them because of their membership in a class, and (2) the criteria defining the class are invidious." Aulson v. Blanchard, 83 F.3d 1, 4 (1st Cir. 1996) (citing cases).

Here, the amended complaint is devoid of any allegation that Stewart, O'Shea, O'Hara, Quigley, the John Doe defendant, or Tufts were motivated by any racial or class-based, invidiously discriminatory animus against Clemens in their participation in the alleged conspiracy against him. Indeed, the amended complaint suggests throughout that the actions that gave rise to this litigation stem from Clemens' personal disputes and litigation history with the Town of Scituate and various officials.[1]   See generally D. 13; see id. at 19 (alleging that the U.S. Attorney's office has an "ongoing vendetta against" Clemens); D. 37 at 8 (alleging that Quigley acted "out of personal motive").

Accordingly, the Court dismisses Clemens' claims under Section 1985.   See, e.g., Romero-Barcelo v. Hernandez Agosto, 75 F.3d 23, 34–35 (1st Cir. 1996) (affirming dismissal of Section 1985(3) claim where, in part, the lower court found "no articulation of a clear class-based invidious discriminatory animus behind the alleged actions of the alleged conspirators" and the plaintiff relied solely on conclusory statements (internal citation and quotation marks omitted)); Sepulveda v. UMass Corr. Health Care, 160 F. Supp. 3d 371, 388 (D. Mass. 2016) (dismissing Section

---

[1] Clemens' history of litigation against the Town of Scituate and various town officials is set forth in In re Jeffrey Clemens, No. 18-MC-91252-IT, 2020 WL 5946621, at *1–3 (D. Mass. Oct. 7, 2020).

1985(3) claim where plaintiff "does not allege that he is a member of a protected class, nor does he allege that defendants' failure to provide adequate medical care was the result of a class-based, discriminatory animus" (citing cases)); Rua v. Glodis, 52 F. Supp. 3d 84, 99 (D. Mass. 2014) (dismissing Section 1985(3) claim where "[e]vidence of discrimination on the basis of race, class, or other category is entirely lacking"); Siaca v. Autoridad de Acueductos, 160 F. Supp. 2d 188, 204 (D.P.R. 2001) (dismissing Section 1985(3) claim where "plaintiffs have made no allegation, which even inferentially indicates . . . that defendants were motivated by any class-based, invidiously discriminatory animus").

### 2.   *Intentional Infliction of Emotional Distress*

To state a claim of intentional infliction of emotional distress under Massachusetts law, a plaintiff must show: "(1) that the [defendant] intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it."  Limone v. United States, 579 F.3d 79, 94 (1st Cir. 2009) (alteration in original) (quoting Agis v. Howard Johnson Co., 371 Mass. 140, 144–45 (1976)) (internal quotation marks omitted).  "The standard for making a claim of intentional infliction of emotional distress is very high."  Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996) (citing Agis, 371 Mass. at 145).  Conduct is "extreme and outrageous" if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987) (quoting Restatement (Second) of Torts § 46, comment

d (1965)) (internal quotation mark omitted).  Recovery for such a claim generally "requires more than "that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" Doyle, 103 F.3d at 195 (quoting Foley, 400 Mass. at 99).

In the case at bar, Clemens contends that Stewart, O'Shea, and O'Hara committed intentional infliction of emotional distress by framing him for witness intimidation through the use of deception, perjured testimony, and the deliberate suppression of evidence favorable to him.  D. 32 at 14–17.  The facts even as alleged in the amended complaint, however, do not support the contention that these Defendants engaged in sufficiently extreme and outrageous behavior.

The amended complaint makes the following allegations regarding Stewart:  (1) after O'Hara received a call from a Hingham District Court employee, Stewart told O'Hara to call the Hingham police department and "encourage them to surveil [Clemens] and his brother;" (2) Stewart served Clemens and his brother with a No Trespass Notice; (3) Clemens was arrested for violating the No Trespass Notice given to him by Stewart; (4) Clemens' brother emailed a public records request to Stewart and Stewart responded with the information requested; (5) Stewart testified against Clemens during the 2019 trial for witness intimidation; (6) because Stewart worked with Tufts's son, he must have been aware of the allegedly false allegations Tufts made against Clemens; (7) Stewart has not disclosed which Hingham District Court employee called O'Hara on April 12, 2016; and (8) Stewart claimed to have no documents supporting, among other things, the No Trespass Notice.  D. 13 at 6–9, 11, 14, 17, 21.  None of these alleged facts, even in the aggregate, are sufficient to sustain a claim of intentional infliction of emotional distress.  This is not the stuff of which an intentional infliction of emotional distress claim is made.  See Conway

v. Smerling, 37 Mass. App. Ct. 1, 8 (1994) (explaining that the term "outrageous" "means, for example, a high order of reckless ruthlessness or deliberate malevolence that . . . is simply intolerable").

As for O'Shea, the amended complaint only makes three allegation against her:  (1) O'Shea prepared the police report summarizing her conversation with Tufts and Tufts's allegations against Clemens; (2) O'Shea's report is false; and (3) O'Shea works with Tufts' son.  D. 13 at 14–18. Likewise, these allegations fail to state a claim for intentional infliction of emotional distress. Clemens suggest that O'Shea's report is false because she is "a past and ongoing night shift officer," so it would be unlikely that she "would have encountered . . . Tufts, a day time employee, in the manner as [O'Shea] reported in her charging papers, that is, happening to see . . . Tufts[] just as she walked into the police station supposedly with an intent to make a complaint."  Id. at 17.  Such speculation regarding O'Shea's relationship with Tufts or any basis for alleging that O'Shea's report was knowingly false are not sufficiently for an intentional infliction of emotional distress claim against O'Shea.

Finally, the amended complaint makes the following allegations as to O'Hara:  (1) after receiving a call from a Hingham District Court employee and speaking with Stewart, O'Hara called the Hingham police department and informed them that Clemens and his brother had invalid driver's licenses—which Clemens alleges is untrue; (2) O'Hara spoke with a bailiff and prosecutor during the Hingham District Court bail proceedings for Clemens; (3) O'Hara works with Tufts' son; and (4) O'Hara has not disclosed which Hingham District Court employee called him on April 12, 2016.  Id. at 6–7, 9, 17, 21.  As was the case with Stewart and O'Shea, none of these facts give rise to a claim of intentional infliction of emotional distress against O'Hara.

For all of the aforementioned reasons, Clemens has failed to state claim for Section 1985(3) conspiracy or intentional infliction of emotional distress against these Defendants and Counts I–VI are dismissed.[2]

**B.    Count VII**

In Count VII, the sole count against the Town of Scituate, Clemens alleges 42 U.S.C. § 1983 liability against the Town of Scituate for willfully allowing and facilitating the alleged violation of his constitutional rights.  To state such a claim, "a plaintiff must show that a specific government policy or custom directly caused a violation of the plaintiff's constitutional rights." Am. Honda Fin. Corp. v. City of Revere, 471 F. Supp. 3d 399, 404 (D. Mass. 2020) (citation omitted). Such policies include "practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011) (citing Monell v. New York City Dep't. of Soc. Servs., 436 U.S. 658, 691 (1978)).

Here, the amended complaint is silent regarding allegations concerning any government policy or custom that subjected Clemens to a deprivation of his constitutional rights.  See generally D. 13.  Clemens also fails to address this requirement in his oppositions.  See generally D. 32; D. 37.  Instead, "[t]he complaint alleges misconduct from many separate actors, but gives no guidance about which acts are properly attributable to the municipal authority."  Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013).  This is insufficient to support a Section 1983 action against a municipality.

Accordingly, Count VII is dismissed.

---

[2] As the Court dismisses the Section 1985(3) and intentional infliction of emotional distress claims for the aforementioned reasons, the Court need not reach the Town Defendants' additional bases to dismiss these claims.  D. 24 at 9–14, 16–17; D. 34 at 4–10.

**VI.     Conclusion**

For the foregoing reasons, the Court ALLOWS the Town Defendants' motion to dismiss,

D. 23, and ALLOWS Quigley's motion to dismiss, D. 34.[3]

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[3] What remains for this Court's consideration is Clemens' request for a thirty-day stay of these proceedings, D. 39, and his motion for leave to file a second amended complaint, D. 40.  In light of this Court's ruling on the motions to dismiss, Clemens' request for a thirty-day stay of these proceedings is DENIED as moot.  D. 39.  Denial of his motion for leave to file a second amended complaint is also warranted.  While leave to amend pleadings should be "freely given[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), courts have discretion to deny such a request if the proposed amendment would be futile, there has been repeated failure to cure deficiencies in the pleadings and/or allowing amendment would cause undue prejudice to the defendants, U.S. ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48 (1st Cir. 2009) (citing cases).  Such is the case here.  The proposed second amended complaint does not include any further allegations regarding any of the alleged actions taken by the named defendants in this matter; rather, it alleges actions by many individuals not named as defendants in this matter, related to an alleged wide-ranging conspiracy to "obtain gaming licenses and, in turn, build casinos in not only Massachusetts but Ohio and Nevada."  See, e.g., D. 40 at 1.  Significantly, none of the proposed amendments cure the aforementioned deficiencies.  In other words, even taking as true the allegations in the proposed second amended complaint, Clemens still does not allege that the defendants were motivated by a racial or class-based animus, that the defendants took any actions that satisfy the high bar for intentional infliction of emotional distress claim, or that the Town of Scituate had any governmental policy or custom that subjected Clemens to a deprivation of his rights.  For all of these reasons, Clemens' motion for leave to file a second amended complaint is DENIED.  D. 40.